[No. 1491.]

## DAVID KEMP *v.* THE STATE.

1. MURDER—CHARGE OF THE COURT.—See the statement of the case for a charge in a murder trial held a clear and ample enunciation of the law of murder in the second degree, manslaughter and justifiable homicide.
2. SAME—EVIDENCE.—See *Kemp* v. *The State*, 11 Texas Court of Appeals, 174, for evidence on a former trial of this case, identical with that adduced on this trial, and held sufficient to support a conviction for murder in the second degree.

APPEAL from the District Court of Erath.   Tried below before the Hon. T. L. Nugent.

A former trial of this appellant for the murder of F. A. Smith, in Hamilton county, Texas, on the second day of May, 1882, resulted in his conviction of murder in the first degree, with the death penalty assessed.   This second trial resulted in his conviction of murder in the second degree, with a term of twenty-five years in the penitentiary assessed against him as punishment.

The evidence on this trial is substantially the same as that adduced on the former trial, and is set forth at length in the report of that case, for which see the eleventh volume of these Reports, page 174.

Upon the suggestion of the judge delivering the opinion, the charge of the trial judge is set out below, in its entirety.   It is as follows:

*"Gentlemen of the jury:*

"In this case, the defendant, David Kemp, stands charged by indictment with the murder of F. A. Smith, alleged to have been committed in the county of Hamilton, and the State of Texas, on the second day of May, A. D. 1881.

2 J

"The Penal Code of this State declares that every person with a sound memory and discretion who shall unlawfully kill any reasonable creature in being within this State, with malice aforethought, either express or implied, shall be deemed guilty of murder.

"From this definition you will see that the killing of a human being, to amount to murder, must be, first, unlawful, and second, it must be committed with malice aforethought.

"Second. A homicide is unlawful when contrary to or against law—that is, when committed under circumstances which neither excuse nor justify it in law. Malice may, in general terms, be defined to be 'the doing a wrongful act intentionally, without just cause or excuse.' As employed in the foregoing definition of murder, the term *malice* includes in its meaning all those states of the mind under which the killing of a human being takes place without any cause which will in law justify, excuse or extenuate the homicide.

"The law itself implies or presumes malice from the commission of any unlawful or cruel act, however suddenly done. Hence, when a homicide is committed without any or without considerable provocation, the law implies or infers malice. In like manner, if a homicide be committed under the immediate influence of sudden anger, rage, resentment, terror or excitement, rendering the mind incapable of cool reflection, the law will imply malice in the absence of any adequate cause to reduce the offense to manslaughter as hereinafter explained. Generally speaking, if the killing of a person grow out of a state of sudden mental agitation produced by whatever cause, or is the sudden rash conception of a mind incapable from any cause of deliberation or reflection, malice will be presumed or implied. So also when a human being is killed, and no circumstances are in proof to justify or extenuate such killing, the law from such killing alone will imply or infer malice.

"Third. To apply the foregoing principles of law to this case, if Dan Bogan and F. A. Smith became engaged in a personal difficulty or combat, however brought about, and Smith, by reason of superior physical strength on his part, or of drunkenness on the part of Bogan, or by any other means, obtained greatly the advantage of Bogan in such difficulty, and if the defendant was Bogan's friend or companion, and in a transport of passion or excitement engendered by the difficulty and its attending circumstances, joined in and made himself a party to the

difficulty, and during its further progress, while his mind by reason of such passion or excitement was incapable of cool reflection, shot and killed Smith; or if, prompted by a sudden impulse of friendship for Bogan, or of resentment at injuries inflicted or about to be inflicted on him, the defendant made himself a party to such difficulty under circumstances showing neither deliberation nor reflection, and afterwards, during the further progress of such difficulty, at a time when from mental agitation or excitement he was incapable of comprehending and contemplating the consequences of his acts, shot and killed Smith; or if the defendant entered into such difficulty under the immediate influence of any other sudden, rash, inconsiderate impulse, passion or excitement, and, during the further progress of the difficulty, before his feelings had time to cool, shot and killed Smith; in either case from such killing the law will imply malice, if the same was neither manslaughter, nor justifiable homicide as explained in succeeding instructions; and if you believe from the evidence that the defendant did, in Hamilton county, and State of Texas, on or about the second day of May, A. D. 1881, unlawfully shoot and kill the said Smith, under circumstances from which the law will imply malice as above explained, and should further believe from the evidence that such killing was neither manslaughter nor justifiable homicide as defined and explained in succeeding instructions, you will find him guilty of murder of the second degree, and assess his punishment at confinement in the penitentiary for any period not less than five years.

" Fourth. Manslaughter is voluntary homicide committed under the immediate influence of sudden passion, arising from an adequate cause, but neither justified nor excused by law.

" By the expression 'under the immediate influence of sudden passion' is meant:

" 1. That the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation.

" 2. That the act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by passion arising from some other provocation, or provocation given by some person other than the person killed.

" 3. The passion intended is either of the emotions of the

mind known as anger, rage, sudden resentment or terror, rend-ering it incapable of cool reflection.

"By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment or ter-ror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

"Fifth.   In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause existed to produce a degree of anger, rage, sudden resentment or terror sufficient to render the mind incapable of cool reflec-tion, but also that such state of mind did actually exist at the time of the commission of the offense.

"Thus, gentlemen, when a voluntary homicide takes place under the immediate influence of sudden passion as explained above, and no cause exists which will in law justify or excuse its commission, then to determine whether such homicide is manslaughter or murder of the second degree the true test is, was there adequate cause to produce such passion?   If there was such adequate cause, the homicide will be manslaughter; if there was not such adequate cause, the homicide will be murder of the second degree.

"Sixth.   To apply the law here laid down to this case: If Bo-gan and the defendant were friends and companions, and Bogan and the said Smith engaged in a serious personal conflict in which Smith, by reason of superiority of personal strength, or the drunkenness of Bogan, or by any other means, obtained greatly the advantage of Bogan, and struck Bogan down, and with deadly weapons or otherwise assaulted Bogan under cir-cumstances from which the defendant had reasonable ground to believe that Smith was about to kill Bogan, or to inflict on him great bodily injury; and if such facts were adequate cause to produce and did produce in defendant's mind a degree of anger, rage, resentment or terror sufficient to render it incapa-ble of cool reflection; and if under the immediate influence of such anger, rage, resentment or terror, the defendant took part in such difficulty or conflict in behalf of Bogan, and shot and killed Smith, then such killing, if not justifiable under succeed-ing instructions, must be regarded as manslaughter; and if you so believe from the evidence, and further believe from the evi-dence that such killing took place in the county, and at or about the time laid in the indictment, you will find the defendant guilty of manslaughter, and assess his punishment at confine-

ment in the penitentiary for any period not less than two nor more than five years.

"But, in further explanation of the law as here given, you are instructed that if Bogan provoked such conflict with Smith, with the apparent intention of killing him, or of doing serious bodily injury to him, and if the defendant knew such fact, and with such knowledge voluntarily took part in such conflict, and shot and killed Smith, such killing cannot, in law, be regarded as manslaughter.

"Seventh. I will now, gentlemen, give you in charge the law of justifiable homicide, and will explain to you the circumstances under which the law permits and justifies the killing of a human being.

"In the first place, then, homicide is permitted by law, and subject to no punishment, when inflicted for the purpose of preventing the offense of murder or maiming, or for the purpose of preventing the infliction of serious bodily injury, whether the homicide be committed by the person about to be injured or by some person in his behalf; but, to justify homicide upon this ground, it must reasonably appear by the acts, or by words coupled with the acts of the person killed, that it was the purpose and intent of such person to commit such offense or inflict such injury; and, furthermore, the killing must take place while the person killed was in the act of committing such offense, or inflicting such injury, or after some act done by him showing evidently an intent to commit such offense or inflict such injury.

"In the second place, homicide is justifiable in the protection of the person against any other unlawful and violent attack besides an attack with intent to murder or maim, or inflict serious bodily injury; but, in such cases, all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack. But the attack upon the person or individual, in order to justify homicide, must be such as produces a reasonable expectation or fear of death, or some serious bodily injury.

"In the third place, in order to justify homicide on the ground of self-defense, or defense of another, it is not essential that there should be any actual or real danger to the life or person of the party killing, or to the life or person of the party for whose protection the homicide is committed, if there be an appearance of danger, caused by the acts or demonstrations of the party

killed, or by words coupled with the acts or demonstrations of such party; and if such acts or demonstrations, or such words coupled with acts or demonstrations, produce in the mind of the party slaying a reasonable expectation or fear of death, or some serious bodily injury to himself, or to the person in whose behalf he interferes, the party killing will be justified if he acts on such appearance of danger, and under such reasonable expectation or fear, even though it subsequently appear that there was in reality no danger.

"Moreover, gentlemen, the party whose person is unlawfully assailed is not bound to retreat to avoid the necessity of killing his assailant, and whatever one may lawfully do in defense of his own life or person, the law permits him to do to protect the life or person of another.

"Eighth. I will now apply the foregoing principles of law to the facts of this case.

"In the first place, if Smith provoked and brought on a conflict with Bogan; or if Bogan provoked and brought on such conflict, and afterwards in good faith withdrew from the same, and abandoned all hostile intent against Smith, and did no act from which Smith could reasonably infer a further intention on Bogan's part to renew or prosecute the difficulty; and if Smith, after such withdrawal by Bogan, continued or renewed the difficulty; and if the defendant interfered in such conflict or difficulty in behalf of Bogan, he was justified in so doing, if such interference took place under the following circumstances, to-wit:

"In the first place, if, in the progress of such difficulty, Smith made an attack upon Bogan with intent to murder or maim him, or with intent to inflict serious bodily injury on him, the defendant was justifiable in interfering for Bogan's protection, even to the extent of killing Smith at once, if it reasonably appeared by the acts of Smith, or by words coupled with the acts of Smith, that it was the purpose and intent of Smith to commit such offense or inflict such injury.

"In the second place, if, in the progress of such difficulty, Smith made any other unlawful and violent attack upon Bogan, besides an attack with intent to murder or maim, or to inflict serious bodily injury on him, the defendant was justified in interfering in such difficulty for Bogan's protection, if from such unlawful and violent attack he had reasonable ground to fear

and did fear that Smith was about to kill Bogan, or to do him some serious bodily harm.

"In the third place, if, in the progress of such difficulty or conflict, from Smith's acts or demonstrations the defendant had reasonable ground to fear and did fear that Smith was about to kill Bogan, or inflict on him serious bodily harm, the defendant was justified in such interference, whether there was any real or actual danger to the life or person of Bogan or not; provided there was an appearance of actual danger.

"If under the foregoing instructions you should find that the defendant interfered in such difficulty under circumstances justifying him in so doing, then you are instructed that the law permitted him to use so much force for the protection of Bogan's life or person as was reasonably necessary, under all the circumstances as they appeared to him, to accomplish that end.

Ninth. If, in view of the explanations contained in the foregoing (eighth) subdivision of this charge, and the evidence in this case, you should find that the defendant interfered in a difficulty between Smith and Bogan, if there was such a difficulty, under circumstances which justified him in so doing; and if, in the further progress of such difficulty, the defendant, David Kemp, shot and killed Smith, he was justified in so doing, if such shooting and killing occurred under any of the following circumstances, to-wit:

First, the defendant was justified in such killing if he did so to prevent Smith from murdering or maiming him, or to prevent Smith from inflicting serious bodily injury on him, provided it reasonably appeared by the acts of Smith, or by the words coupled with the acts of Smith, that it was the purpose and intent of Smith to murder or maim the defendant, or to inflict serious bodily injury on him; and the killing must have taken place while Smith was in the act of committing such offense of murdering or maiming or of inflicting such bodily injury; or after some act done by Smith, showing evidently an intent to commit such offense or inflict such injury.

"In the second place, the defendant was justified in such killing if he did the same to protect himself against any other unlawful and violent attack on the part of Smith besides an attack with intent to murder or maim the defendant, or to inflict serious bodily injury on him. But, to justify himself in killing Smith to defend himself by an attack by Smith, not amounting to an attempt to murder or maim, or to inflict serious bodily

injury, such an attack must have been such as produced in defendant's mind a reasonable expectation or fear of death, or some serious bodily injury, and the defendant must have resorted to all other means for the prevention of the injury, and the killing must have taken place while Smith was in the very act of making such unlawful and violent attack; but the defendant was not in any event bound to retreat to avoid the necessity of killing Smith.

"In the third place, in order to justify the defendant in killing Smith, if he did kill him, it is not essential that there should have been any actual or real danger to the defendant's life or person. If Smith made an unlawful attack on the defendant, or did any act, or made any demonstration, which produced in defendant's mind a reasonable expectation or fear of death, or some serious bodily injury; and if the defendant shot and killed Smith under such reasonable expectation or fear arising from such acts or demonstrations of Smith, he was justified in so doing; and in law it would make no difference whether the danger to defendant's life was real or imaginary, if it had the appearance to him of being real.

"Tenth. When a homicide takes place to prevent murder or maiming or the infliction of serious bodily injury, if the weapons or means used by the party attempting or committing such murder or maiming or serious bodily injury are such as would have been calculated to produce that result, the law itself presumes that the party so using such weapons or means designed to inflict the injury.

"If, therefore, Smith provoked and brought on the alleged difficulty with Bogan, or if Bogan provoked and brought on such difficulty, and afterwards in good faith withdrew from the same, and abandoned all hostile intent against Smith, and did no act from which Smith could reasonably infer a further intention on Bogan's part to renew or prosecute the difficulty, and if Smith, after such withdrawal by Bogan, continued or renewed the difficulty; and if in the further progress of such difficulty Smith made an attack upon Bogan with weapons or means calculated to produce death or maiming or serious bodily injury, then the law itself presumes that Smith intended to murder or maim Bogan, or to inflict on him serious bodily injury, and if such was the case, any person was justified in interfering to protect Bogan from such injury even to the extent of taking Smith's life.

"Eleventh. In connection with the foregoing instructions on

the law of justifiable homicide, or homicide in self-defense, you are further charged that when one intentionally seeks and brings on a conflict with another, and in such conflict kills his antagonist, he will not, in law, be justified in such killing, although in such conflict his life or person be endangered.

"If, therefore, you believe from the evidence that Bogan, with deadly weapons, intentionally sought and brought on the alleged difficulty with Smith, and that he did not withdraw or retire in good faith from such difficulty, and that the defendant, knowing that Bogan had so sought and brought on such difficulty, joined in and made himself a party to such difficulty in aid of Bogan, and thereafter, in the further progress of such difficulty, shot and killed Smith, you cannot, if you so believe from the evidence, regard the defendant as justifiable in such killing.

"Twelfth. If you believe beyond a reasonable doubt that the defendant is either guilty of murder of the second degree or manslaughter, but have a reasonable doubt as to whether he is guilty of the one or the other of these offenses, you will give him the benefit of such doubt, and find him guilty of manslaughter.

"Thirteenth. If you believe that the defendant killed Smith as alleged, but further believe that such killing was justifiable homicide, as before explained, you will find the defendant not guilty.

"Fourteenth. The law presumes the defendant to be innocent until his guilt is established by legal and competent evidence. You are the exclusive judges of the facts proven, the weight to be given to the testimony, and the credibility of the witnesses, and if you have a reasonable doubt of the defendant's guilt, you will find him not guilty."

Counsel for the defendant asked the court to give the following instructions; which the court refused to do, and the defense reserved exceptions:

"If the jury believe from the evidence that Bogan provoked the difficulty with the deceased, and that the deceased knocked down and disarmed the said Bogan, and rendered the said Bogan powerless to do him, the deceased, any harm; and if you further believe from the evidence that, after the said Bogan was knocked down and rendered powerless to do the deceased any injury, he, the deceased, by acts or demonstrations, reasonably indicated that he immediately intended to take the life of the said Bogan, or do him some great bodily harm, then the de-

fendant would have been authorized to interfere for the protection of him, the said Bogan, and to use such force as was necessary for that purpose; and if you further believe from the evidence that the defendant only used such force as was necessary for that purpose, and that the deceased turned on the defendant with such force as to make it reasonably apparent to him, the defendant, that his life was in danger, or that he was in danger of great bodily injury, then the defendant was authorized to take the life of the deceased, and such killing would be jutifiable homicide, even though it should afterwards appear that the danger was only apparent and not actual; and if you so believe you should acquit.

" If you believe from the evidence that Smith made an assault on Bogan, and that the defendant interfered to protect Bogan under circumstances justifying him in so doing, in determining whether defendant used such force as was necessary to repel the assault on Bogan you may take into consideration the relative physical strength of Smith and Bogan and defendant, according to the evidence before you.

" If the jury believe from the evidence that Smith, after Bogan had used abusive language towards him, jumped out of the wagon and advanced on Bogan, and struck and knocked him (Bogan) down, and then did acts or made demonstrations that reasonably indicated to the defendant Kemp that he, Smith, would take the life of Bogan, or do him some serious bodily injury, although there was no actual danger, then the defendant was authorized under the law to interfere in Bogan's behalf, and to use such force as was reasonably necessary to repel the assault of Smith on Bogan; and if you further believe that the defendant did interfere in behalf of Bogan at a time when Smith was doing some act or making some demonstration which reasonably indicated to him that Smith intended to take the life of Bogan, or inflict some serious bodily injury on him, and that he, the defendant, used no more force than reasonably appeared to be necessary to repel the attack of Smith on Bogan, or to prevent Smith from taking the life of Bogan, or doing him some serious bodily injury, and that Smith then turned on defendant and did acts or made demonstrations that reasonably indicated that he, Smith, intended to take the life of the defendant, or to do him some serious bodily injury, although there was no actual danger, and that the defendant shot and killed him (Smith), believing that the same was necessary to save his life,

or to protect his person from serious injury, then you will find him not guilty.

"Insulting or abusive language does not justify an assault.

"If you believe from the evidence that Bogan sought and brought on a difficulty with Smith, then Smith would have been anthorized to use only such force as was necessary to repel the assault or attack made on him by Bogan; and if you believe from the evidence that Smith used greater force than was necessary for that purpose, then he, Smith, became the aggressor; and if you further believe that Smith struck and knocked Bogan down, and rendered him powerless to do him, Smith, any further violence, and that he, Smith, then took Bogan's pistol away from him and raised it up in a position to reasonably indicate to the defendant that he, Smith, intended to take the life of Bogan, or inflict some serious bodily injury on him, although in fact there was no actual danger of his doing the same, the defendant had a right to interfere in Bogan's behalf, to protect him from such apparent danger; and if you further believe that the defendant did interfere under such circumstances and struck Smith with his pistol, and that Smith then turned on the defendant, and did acts or made demonstrations that reasonably indicated to the defendant that he, Smith, intended to take the life of the defendant, or inflict some serious bodily injury on him, although in fact there was no actual danger, and that defendant then shot and killed Smith, you will find him not guilty.

"The evidence as to whether the defendant had reasonable grounds to believe that Bogan's life was in danger, or that he was in danger of serious bodily injury from the hands of Smith, or as to whether he, the defendant, had reasonable grounds to believe that Smith intended to take his life, or do him some serious bodily injury, is not the view the jury might take of the acts and demonstrations of Smith at the time, but the view the defendant, under all the surrounding circumstances, took of them at the time.

"If you believe from the evidence that Bogan and the defendant were friends, and that Smith struck and knocked Bogan down, in the presence of defendant, and that the act of Smith in striking and knocking Bogan down created such a degree of anger, resentment, or sudden passion in the mind of defendant as to render him incapable of cool reflection, and that the defendant, while laboring under such anger, resentment, or sud-

den passion, engaged in the difficulty with Smith, and shot and killed him, you will find defendant guilty of manslaughter.

"The same rules of conduct applicable to Bogan, in protecting himself from violence to his person from Smith, are applicable to the defendant in interfering in Bogan's behalf."

The motion for new trial assailed the charge given by the court to the jury, and the refusal of the court to give the foregoing specially requested instructions; and also attacked the sufficiency of the evidence to support the verdict of the jury.

*J. A. Eidson* and *Neill & Young*, for the appellant.    The first error assigned is:   The court erred in the third subdivision of its general charge, in which the principles of law governing murder in the second degree, enunciated by the court, are applied to this case, which errors are as follows:

1.   Said subdivision of the charge does not fully apply the principles of law governing murder in the second degree to the facts in this case.

2.   Said part of the charge restricts the implication, by law, of malice to the killing of a human being by one at a time when his mind, by reason of passion or excitement, is incapable of comprehending and contemplating the consequences of his acts.

3.   Said portion of the charge, in connection with subsequent portions of the charge by the court, makes murder in the second degree depend upon facts, circumstances and a state of mind which show that the defendant, at the time of the killing, was incapable of comprehending and contemplating the consequences of his own acts.

4.   Said subdivision of the court's charge, in effect, instructs the jury that the law will imply malice from the fact of killing under *certain facts* and *circumstances,* if such killing was neither manslaughter nor justifiable homicide as explained in succeeding instructions; yet the court nowhere, in its succeeding instructions, submits to the jury the question as to whether such facts constitute such adequate cause as would reduce the homicide to manslaughter.

5.   Said portion of the charge instructs the jury to find the defendant guilty of murder in the second degree upon their finding that the killing was done under such facts and circumstances as showed that the defendant was at the time of the killing in such a transport of excitement or passion as to render him incapable of contemplating and comprehending his own

acts; yet said portion of the charge, nor no succeeding instructions of the court, submit to the jury the question as to whether or not such facts or circumstances were adequate cause to produce in the defendant's mind such a transport of excitement, passion, anger, rage, resentment or terror, as to render him incapable of cool reflection and of comprehending or contemplating the consequences of his own acts.

A homicide committed under the immediate influence of sudden passion, produced by an adequate cause, is not murder of the second degree.

When the contest is between murder of the second degree on one side and manslaughter on the other, the court should clearly and distinctly distinguish in its charge between these two degrees of culpable homicide. (*Maria* v. *The State*, 28 Texas, 698; *Lindsey* v. *The State*, 36 Texas, 337.)

The evidence shows that this was a sudden difficulty, and that the defendant and Bogan were friends, and that immediately before defendant interfered deceased struck Bogan a severe blow, felling him to the ground, and that there was no appreciable interval in the fight between deceased and defendant from the moment the latter interfered till the fatal shot was fired.

Said subdivision of the charge reiterates too frequently and places too prominently before the jury the abstract proposition of law that a homicide committed under the influence of sudden passion not produced by an adequate cause is murder of the second degree. The charge should not overreach a plain statement of the law applicable to the case, nor warrant the remotest inference of fact to be drawn from its language. (*Harrison* v. *The State*, 8 Texas Ct. App., 183.)

This subdivision of the charge was calculated to mislead the jury, and, even though not excepted to at the time, will authorize a reversal of this cause. (*Hodges* v. *The State*, 3 Texas Ct. App., 470; *Anderson* v. *The State*, 1 Texas Ct. App., 730; *Williams* v. *The State*, 3 Texas Ct. App., 316; *Bishop* v. *The State*, 43 Texas, 390; *Reynolds* v. *The State*, 8 Texas Ct. App., 412.) It was called to the attention of the court in the motion for new trial. (*Holmes* v. *The State*, 11 Texas Ct. App., 237.)

The court erred in its sixth subdivision of the general charge to the jury, in which the principles of law enunciated by the court governing manslaughter are applied to this case; which errors are as follows, viz.:

1. Said subdivision of the charge does not fully apply such principles of law to the facts of this case.

2. Such subdivision of the charge, taken in connection with the whole charge, virtually withholds from the jury any consideration of the question of manslaughter.

3. Such subdivision of the charge authorizes the jury to find the defendant guilty of manslaughter upon their finding a state of facts which, under the law, would constitute nothing but justifiable homicide.

4. Such subdivision of the charge does not allow the jury to find the defendant guilty of manslaughter without it should appear that the deceased struck Bogan down, and with deadly weapons or otherwise assaulted Bogan under such circumstances from which the defendant had reasonable grounds to believe that Smith was about to kill Bogan, or to inflict upon him great bodily injury.

5. Such subdivision of the charge restricted the jury in their consideration of the question of manslaughter in this case to the finding of facts and circumstances from which the defendant had reasonable ground to believe that the deceased was about to kill his friend or inflict upon him some great bodily injury, and made the question of manslaughter depend alone upon such reasonable ground of belief.

6. Such subdivision of the charge restricted the jury in their investigation of manslaughter to the consideration only of such facts and circumstances and the state of defendant's mind as had occurred before and existed at the time the defendant interposed in the difficulty between Bogan and Smith, whereas the inquiry of the jury should have also been directed by an appropriate charge of the court to the facts and circumstances and the state of the defendant's mind as they occurred and existed at the very time of the killing.

There are three theories presented by the testimony in this case, under each of which there is testimony tending to show that the homicide was of no higher degree than manslaughter:

1. That the deceased brought on the conflict with Bogan and knocked him down, in the presence of defendant, who was his friend and companion, causing Bogan pain, and thereby created in the mind of defendant such a feeling of sudden resentment as rendered him incapable of cool reflection, and that defendant immediately interfered in the difficulty, and, while still laboring under such feeling of resentment, killed Smith.

2. That Bogan was the aggressor, but that the aggression was not made with the intent to bring on a conflict with the deceased and for the purpose of killing him, and that the deceased, by means of great superiority of personal strength, struck and knocked Bogan down, and thereby inflicted upon him great injury, and that such act of the deceased created in the mind of the defendant, he being his friend and companion, such a degree of anger, rage and sudden resentment, as to render him incapable of cool reflection, and that while laboring under such a state of mind the defendant engaged in the difficulty and shot and killed Smith.

3. That Bogan was the aggressor, but that the aggression was not made with the intent to kill the deceased, and that the deceased struck and knocked Bogan down, and that the defendant interfered for the purpose of protecting Bogan, and to prevent any further injury being inflicted upon him by the deceased, and that the deceased turned upon him (defendant) and made such a violent attack upon him with deadly weapons, or by means of his great superiority of personal strength, as created in the mind of the defendant such a degree of terror, rage, or sudden resentment, as to render him incapable of cool reflection, and that, while laboring under such a state of mind, he shot and killed Smith.

The court nowhere in its charge presents the law applicable to either of these theories. The only instruction in which the law of manslaughter is attempted to be applied to the facts of this case is contained in the sixth subdivision of the general charge. And this instruction is so framed as to authorize the jury to apply the law enunciated therein to either of these theories, whereas it is not applicable to any of them.

The language of said subdivision sixth is: "If Bogan and defendant were friends and companions, and Bogan and the said Smith engaged in a serious personal conflict," etc. The language employed indicates to the jury that the law would be the same, regardless of who was the aggressor, Smith or Bogan. The law enunciated in said subdivision of the charge is not applicable to such a state of facts as therein set out. If "Smith and Bogan engaged in a serious personal conflict," and Smith was the aggressor, and the defendant interfered and killed Smith under such a state of circumstances as set out in such subdivision, it was justifiable homicide. If Bogan were the aggressor, but the aggression was not made to bring on a conflict for the purpose

of killing, and he and Smith engaged in a serious personal conflict, and Smith, by reason of superiority of personal strength, obtained greatly the advantage of him and knocked him down (thus inflicting great injury on him), and the defendant interfered and killed Smith under such a state of circumstances, as set out in said subdivision, he would not have been guilty of a higher degree of culpable homicide than manslaughter, although Smith may not have, "with deadly weapons, or otherwise, assaulted Bogan under circumstances from which the defendant had reasonable ground to believe that Smith was about to kill Bogan or inflict on him great bodily injury." (Penal Code, Art. 597, subdivision 2.) The facts of this case imperatively demanded the court to give in charge to the jury subdivision 2 of Article 597 of the Penal Code. (*Ellison* v. *The State*, 12 Texas Ct. App., 582.)

We excepted to this subdivision of the charge. (*Fury* v. *The State*, 8 Texas Ct. App., 471; *Vincent* v. *The State*, 9 Texas Ct. App., 303; *McGrew* v. *The State*, 10 Texas Ct. App., 539, *Maddox* v. *The State*, 12 Texas Ct. App., 429; *Whaley* v. *The State*, 9 Texas Ct. App., 305; *Mace* v. *The State*, 9 Texas Ct. App., 110.)

The evidence tends to support the theories presented, and even if the defendant had not asked suitable instructions on them, it was the duty of the court, in charging the law applicable to the case, to instruct the jury upon these theories. (*Henry* v. *The State*, 9 Texas Ct. App., 358; *Scott* v. *The State*, 10 Texas Ct. App., 112; *McLaughlin* v. *The State*, Id., 340; *Elliston* v. *The State*, Id., 361; *Lawrence* v. *The State*, Id., 495.)

But the defendant, by his counsel, did ask a charge upon one of these theories, and while it may not have been strictly accurate, it was sufficient to indicate to the court what phase of the evidence he desired a charge upon, so that the court could have given a proper charge upon it. (*White* v. *The State*, 10 Texas Ct. App., 398–9.)

An assault and battery, causing pain, is an adequate cause, and the court in this case should have so charged the jury. (Penal Code, Art. 597.)

The proof shows that Smith, the deceased, was a stouter man than Bogan, and that he struck and knocked him down in the presence of defendant, who was his friend and companion. (*Hill* v. *The State*, 8 Texas Ct. App., 142; *Reed* v. *The State*, 9 Texas Ct. App., 316; *Guffie* v. *The State*, 8 Texas Ct. App., 187.)

The same rules which regulate the conduct of the person about

to be injured in repelling the aggression are applicable to the conduct of him who interferes in behalf of such person. (Code Crim. Proc., Art. 72.) Hence if the striking and knocking Bogan down by Smith would have been adequate cause in Bogan's favor, had he killed Smith, then it was adequate cause in defendant's favor.

The sixth subdivision of this assignment of error suggests the proposition that the court should have charged the jury on our third theory, and also as suggested in our motion for new trial in the fourth ground.

The next error which we will take up is the fourth, which is as follows: The court erred in refusing to give the special charge, asked by the defendant's counsel, on manslaughter. This charge proceeds upon the assumption that an assault and battery, causing pain, amounts in law to adequate cause, and that the same rules applicable to the conduct of the person about to be injured apply to the party interfering in his behalf. (*Hill* v. *The State,* 8 Texas Ct. App., 142; Code Crim. Proc., Art. 72.)

The evidence shows that immediately before the defendant interfered the deceased struck and knocked Bogan down; that the lick knocked him several feet; one witness says knocked him flat on his back; another says deceased knocked Bogan about ten feet. From this evidence it clearly appears that the blow was a severe one and certainly caused pain. Then we submit that this evidence authorized the charge we asked, and the refusal of the court to give the same is such error as warrants the reversal of this cause. Counsel for defendant excepted to the charge of the court on manslaughter, and also excepted to the refusal of the court to give the special charge asked.

"Every theory presented by the evidence in the case demands of the court a charge thereon, whether strongly or weakly supported by the testimony. If there be evidence tending to support it, the law must be directly and pertinently applied thereto." (*McLaughlin* v. *The State,* 10 Texas Ct. App., 359; *Ainsworth* v. *The State,* 11 Texas Ct. App., 339.)

And if a charge is asked upon any theory where there is evidence tending to support it, however slight it may be, and the same is refused by the court, and an exception is saved to such ruling, the cause will be reversed. (*Vincent* v. *The State,* 9 Texas Ct. App., 303; *Whaley* v. *The State,* Id., 305; *Heath* v. *The State,* 7 Texas Ct. App., 464.)

"6. The court erred in refusing to give in charge to the jury

2 K

the special instructions asked by defendant's counsel on the law of justifiable homicide, referred to in defendant's bill of exceptions."

In the "instructions asked by defendant" is a charge upon the law by justifiable homicide, applicable to the facts of this case, and the refusal to give which we believe to be erroneous. The appellant interfered in a difficulty between Smith and Bogan, and the purpose for which he interfered—independent of any intent on the part of Bogan—was a most material point of inquiry. The refusal to give the charge, together with the charge on justifiable homicide given, was equivalent to instructing the jury that if they should find that Bogan began a difficulty, with intent to kill or do serious bodily injury, and defendant knew of such intent, they should find defendant guilty without regard to defendant's intent, and without regard to anything else than Bogan's guilt. If Bogan was in a helpless condition, after being felled to the ground by deceased, it was the right of defendant to interfere with so much force as would protect him. (*Kendall* v. *The State*, 8 Texas Ct. App., 579 *et seq.*)

And the defendant could act upon the facts as they reasonably appeared to him. (*Kendall* v. *The State*, 8 Texas Ct. App., 584; Wharton on Hom., sec. 520; Thompson & Hor. Cases, 750, 751, notes 2 and 3.)

Necessity for interference must be judged from defendant's standpoint. (Wharton on Hom., sec. 533.)

The third section was clearly applicable, since the evidence shows that Smith got out of his wagon and advanced on Bogan, and, felling him to the ground, continued a vigorous assault on him, which defendant interfered to prevent; and that, in interfering, defendant made no effort to kill Smith, nor until after Smith began an assault upon him. The authorities cited in support of the latter clause of the first section amply sustain the fourth, and defendant was entitled to have the jury told that the necessity for interference in aid of Bogan, and the necessity of defending himself from the attack of deceased, must be judged from defendant's standpoint. (*Kendall* v. *The State*, 8 Texas Ct. App., 584; *Jordan* v. *The State*, 11 Texas Ct. App., 448-9, 480; *Blake* v. *The State*, 3 Texas Ct. App., 588; Wharton on Hom., secs. 520, 533; Thompson & Hor. Cases, 750, 751, notes 1 and 2.)

The charge having been asked and refused, the cause should be reversed, even though the court should consider that it would

have made no difference in the verdict of the jury. (*Vincent* v. *The State*, 9 Texas Ct. App., 303; *McGrew* v. *The State*, 10 Texas Ct. App., 539; *White* v. *The State*, 10 Texas Ct. App., 598–9.)

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, J. This case was formerly before this court on appeal from a conviction of murder in the first degree with the penalty assessed at death. Upon that appeal the judgment of conviction was reversed and the cause was remanded for a new trial, upon the ground that the evidence was insufficient to sustain a conviction of murder in the first degree. (*Kemp* v. *The State*, 11 Texas Ct. App., 174.) This appeal is from a conviction of murder in the second degree, the penalty assessed being confinement in the penitentiary for a period of twenty-five years.

A number of supposed errors in the charge of the court have been assigned, and ably presented by counsel orally and by brief, all of which we have carefully considered. We are unable to perceive any material error in the very able and lucid charge of the court. In our opinion it is a comprehensive, correct and plain exposition of the law applicable to every phase of the case as made by the evidence. It is substantially the same charge which was before this court on the former appeal in this case, and which, after a careful investigation, was pronounced by this court unobjectionable. It is true that the evidence presented a number of issues the law governing which it was necessary should be explained to the jury in the charge. To frame a charge applicable to the facts in evidence was by no means an easy task, but we think the learned trial judge performed that duty thoroughly and accurately, and with the strictest impartiality, and the most careful regard for the rights of the defendant. Without discussing in detail the several objections urged to the charge of the court, we will only say, as was said by this court on the former appeal, that, "taking each paragraph separately, or the whole charge collectively, we regard it as a full and complete elucidation of the law upon every deduction arising upon the evidence."

We have also considered the other assignments of error, and are of the opinion that none of them are tenable. In our judgment the evidence is amply sufficient to sustain the verdict, and to justify the penalty assessed. We have found no error in the

record which would warrant a reversal of the judgment, and it is therefore affirmed.

                                                    *Affirmed.*

Opinion delivered March 17, 1883.